### JOHN NETH *vs.* ISAAC C. CROFUT.

Under the statute (Rev. Stat., tit. 6, § 152,) which provides that complaints by grandjurors of towns shall be made " to the court having cognizance of the offense or to some justice of the peace in the town where the offense is committed," it is not necessary that the justice of the peace should *reside* in the town where the offense is committed.

A justice of the peace is a county officer, and has criminal jurisdiction throughout the county, to be exercised in the town where an offense is committed.

The election of justices of the peace by the towns, under the amendment of the constitution made in 1850, does not alter the character of the office.

A precept good upon its face, protects the officer that serves it, though not issued by competent authority.

TRESPASS for breaking and entering the plaintiff's dwelling house. Plea that the defendant entered by authority of a criminal warrant, for the arrest of the plaintiff's son residing in the

house.   Tried in the superior court, on  an issue closed to the court, before *Carpenter*, *J.*

It appeared on the trial that the offense for which the warrant was issued was committed in the town of Washington  in Litchfield county, and that the justice of the peace who issued the warrant resided in the town  of Litchfield in that county. The complaint was however made to the justice, and the warrant issued, within  the town of Washington.   The plaintiff objected to the admission of the warrant in evidence, and contended that  it could lawfully have been issued only by a justice residing in the town of Washington.   The court sustained this  claim  and  rendered  judgment  for  the  plaintiff,  upon which the defendant moved for a new trial.

*Hickox* and *E. W. Seymour*, in support of the motion.

*Chittenden* and *Graves*, contra.

BUTLER, J.   It is well settled  that  an officer is not bound to look outside of the precept  which is put into his hands for service.   If that is good on its face, if it appears to have issued from competent authority, and with  legal  regularity, it is his duty to serve it, and  he will  be  protected in making the service which it requires.   *Watson* v. *Watson*, 9 Conn., 140. The complaint in this case was made by the proper officer, set forth an offense which it was his duty to present, was in the usual form, was addressed to a  justice of  the  peace for the county, and for aught that appears on the  face  of it to a justice residing in Washington ; and the warrant, which was also in the common form, was duly signed by  the justice to whom it was addressed.   There was nothing  on  the face of it to apprise the officer that  the grandjuror or  the  justice had not acted rightly, and he was bound to execute the mandate ; and the court  below erred in  holding that he could not justify under it.

And we are also of  opinion that the warrant was in fact a lawful one.

Justices  of  the  peace  are  county  officers.   They  were  so

constituted when the office was first instituted in the state in 1698, and have so remained. They have been so appointed and commissioned, and were sworn as such until a general form of oath for all judicial officers was substituted for the various special forms at the revision of 1821. Since the amendment of the constitution in 1850, they have been elected by towns; but, by express statutory provision, their powers, duties, and jurisdiction continue the same. No legislative act since 1698, expressly relating to them, conferring, defining or limiting their powers and duties, has limited their criminal jurisdiction to the towns in which they reside. By the statutes conferring that jurisdiction it is provided, that " every justice of the peace, in any court holden by him in the county for which he may be appointed, shall have cognizance of all such actions or complaints of a criminal nature, that may be legally brought before him, and may proceed to trial, render judgment, and grant a warrant for the execution thereof according to law.

And as to what may legally be brought before him, and how he shall proceed according to law, it is further provided, that " *every* justice of the peace in *any court holden by him in the county for which he may be appointed,* shall have jurisdiction and cognizance of all offences and crimes, punishable by fine not exceeding seven dollars, or punishable by imprisonment in a common jail not exceeding thirty days, or punishable by such fine and imprisonment both; and in all such cases, said justice of the peace may proceed to trial, render judgment thereon, and grant a warrant for the execution thereof according to law." And there is a further provision that whenever any complaint for any criminal matter is brought before him, and the punishment may exceed that above specified, he may bind over to the court having cognizance of the offense.

These statutes are broad and comprehensive, providing for the investigation and punishment of every offense which may arise, and confer power upon every justice to hold a court in any town in the county, to receive complaints from informing officers, and hear and finally determine them, or bind the offender to a higher court; and unless there be some special

statutory provision, which expressly or by necessary implication limits the exercise of their jurisdiction to the towns in which they reside, their jurisdiction throughout the county as thus conferred must be sustained.

It is claimed that such a limitation is found in the last clause of the section prescribing the duties and limiting the jurisdiction of grandjurors. That section is in these words—" It shall be the duty of grandjurors diligently to enquire after, and to make due presentment or complaint of, all crimes and misdemeanors that shall come to their knowledge, whether committed before or after their appointment to the office ; *which complaint or presentment they shall make to the court having cognizance of the offense, or to some justice of the peace in the town where the offense is committed.*" This provision as to the presentment of offenses (except the word " complaint," which was added in 1830,) was inserted at the revision in 1821, in place of the following which was stricken out, viz :—" which presentment they shall seasonably make to the courts, or to some assistant or justice of the peace, that offenders may be dealt with according to law."

It must be conceded that if the language of that clause as changed was, " which complaint or presentment they shall make to a justice residing in the town where the offense is committed," the intention of the legislature to limit the jurisdiction of justices, as well as grandjurors, would be clear. But such is not the language used, and from the language alone no such intent can be inferred. Nor does it import any such intent when aided or tested by the ordinary rules of statutory construction. It has always been the policy of our law to have two or more justices resident in every town ; many special duties are imposed upon them, which can only be performed in the towns where they reside ; their civil jurisdiction is mainly limited to the same sphere ; and these facts, familiar to our minds, confuse them, and incline us to consider their jurisdiction as limited in all cases. If we guard against that confusion and inclination, and look at the statute as it stood before, and now stands, with the aid of history and the rules of construction, we shall be satisfied that no change in

the jurisdiction of justices, (except as to the place where complaints can be received and heard,) was intended by the clause in question.

In the early history of the state, grandjurors, as single informing officers, were not known. A grandjury was summoned to attend the courts, and make presentment of offenses, as in England. At a later period, one person at least, in each plantation, was specially designated by warrant from the clerk of the court to attend statedly at court for one year, and act as a member of the grandjury. Subsequently such members were authorized to make presentments singly "to some assistant or justice of the peace," the assistants being *ex officio* justices of the peace, and their jurisdiction extending over the entire state. In 1712 the towns were directed by statute to choose grandjurors annually, and they became, by virtue of that and prior statutes, single informing officers, as well as members of the grandjury when convened at court. But their jurisdiction was not limited by town lines. They could singly present to the court having cognizance of the offense, or to "some assistant or justice of the peace." So the law stood till the adoption of the new constitution, and the subsequent revision of the statutes in 1821 to make them conform to the new order of things. The office of assistant had been abolished, that of attorney for the state in each county established, and informations by that officer had superseded presentments by a grandjury, of all offenses except a few specified and heinous ones, and in such cases a grandjury was usually taken from the body of the county. There was no longer any necessity for permitting grandjurors to make presentments out of their towns, and no propriety in giving them such discretionary power; and the revisors, carrying out the policy of the law in relation to venue, that the hearing be as near as might be to the place where the offense was committed, as a matter of economy and convenience to the authorities and the accused, wisely determined to confine the power of grandjurors to make presentment, within the limits of the towns which elected them, and for that purpose made the change described.

The " cause and necessity," the " mischief," of incongruity between the old law and the new order of things, in relation to grandjurors, which induced the change, are apparent. But we can perceive no cause or necessity, no mischief, which could induce the revisors or the legislature to limit the criminal jurisdiction of justices of the peace. If the complaint is presented to them and heard by them in the town where the offense is committed, what difference can the matter of their residence make? Practically, inasmuch as the grandjuror can not go out of his town to make presentment, and justices can not conveniently or pleasantly go into other towns to receive complaints and hear them, the provision undoubtedly operates as a limitation. But we see no reason for believing that an absolute restraint was intended, and much reason to believe that none was intended as claimed, for we can conceive of many contingencies in which it would be desirable that the law should remain as it always has been, and which might well have operated on the minds of the revisors and legislature.

And in this construction we are confirmed by every other circumstance which bears upon the question.

The constitution of 1818 produced so many and such important changes in the jurisprudence and general policy of the state, that very great changes in the statutes became necessary. In 1819 Thomas Day and Lemuel Whitman, were appointed a committee to make them. They found it impossible to do it without a general and thorough revision of the entire statutes. In 1820 the legislature directed them to make such revision, and associated Judge Swift with them. The result of their labors was the " concise, perspicuous and comprehensive code " of 1821, into which the clause we have been considering was introduced. Two of that committee were learned, critical and accomplished jurists, and the committee as a whole very able. To them the terms " residing in," " dwelling in," and " of the town," so often and generally used to designate a resident in the statutes they were revising and in the forms of pleading with which they were conversant, were as familiar as household words; yet they used neither of

them in the clause by which it is claimed they intended to limit the jurisdiction of justices to residents of the town ; and on the other hand they did use a word which was very apt to effect the purpose intended relative to grandjurors without affecting the jurisdiction of justices, and very inappropriate for the double purpose which it is claimed they intended ; and they made no corresponding change in other and material statutes. Now it is not credible that such men, doing such a work in the manner in which they did it, or the legislature who approved their work, could have used such language, with the intent claimed, and left the statutes conferring jurisdiction on justices unaltered and in conflict.

And further light on this subject may be had by adverting to our forms for criminal proceedings. Within the next two years after the revision of 1821, Judge Swift prepared the second volume of his Digest, which contains a treatise on crimes and criminal prosecutions, and the requisite criminal forms. If the law was changed as claimed, and by his agency in part, so that the residence of the justice had become material, would all allusion to it in the treatise, and the averment in the forms have been omitted ? We think not ; and are confirmed in that belief by the fact, that in giving a form for a complaint to two justices against refractory apprentices, where the statute expressly provides that they shall reside in the town, that averment is inserted. So too in 1833 the late Judge Niles prepared and published his " Civil Officer." That work is quite full on the powers of justices, and the forms to be used by them, and by informing officers, in criminal proceedings, and was carefully prepared, and has been and is esteemed very accurate. It does not however contain, either in its statement of the powers and duties of justices, or in its forms, any intimation that a justice can not receive and hear a complaint of a grandjuror out of the town in which the justice resides. Nor indeed is there now extant, so far as we can discover, a form for a criminal complaint, for an offense which it is the duty of a grandjuror to present, in which the justice is otherwise described than as a justice of the peace for the county, and without any averment of residence.

It has been urged upon us that the case of *The State* v. *Bishop*, 7 Conn., 181, is an authority to sustain the decision of the court below. But we do not so understand that case. The point was there made on a writ of error, that the complaint did not contain an averment that the justice of the peace to whom it was made and who heard it, resided in the town where the offense was committed. The reporter informs us that the point was not much pressed, and that the counsel on the other side were stopped by the court, and it appears that the court, without passing upon the necessity of the averment, held that the point could not be made after a plea of not guilty, nor when it appeared on the record that the defendant was ordered to be arrested and taken before, and was in fact taken and tried before, a justice who resided in the town. The question we are considering, for aught that was determined in that case, is an open one. Allusion has also been made to the fact that a special provision empowering justices to hear complaints in other towns, was inserted in the " Act for the suppression of Intemperance," passed in 1854. That fact is unimportant. Super-abundant caution was undoubtedly used in framing that statute to forestall every conceivable question that could by possibility be raised to embarrass the execution of it.

A new trial must be advised.

In this opinion the other judges concurred.