### JOHN C. GRAY *vs.* EDWARD S. DAVIS.

Where a warrant for the seizure of liquors under the provisions of the act for the suppression of intemperance, after describing the place to be searched and the liquors to be seized, used the following language with regard to the latter,—" and are owned or kept by the said G and are intended by him to be sold in violation of the act,"—it was held that this language was merely that of averment, and not of description, and that it was therefore not essential to the justification of the officer serving the warrant that the liquors seized should in fact be owned or kept by G.

It is no objection to a search warrant under that act, that it directs the search of several different places.

Where such a warrant, valid at the time it was issued, has been legally served by an officer, he can not be affected by any omission of the magistrate in the subsequent proceedings in the case.

The rule which makes a copy of a public record admissible in evidence, is founded on the inconveniences attending a removal of such a record from its place of custody.

But where the original record is offered in evidence, it is the highest evidence, and admissible.

TRESPASS for breaking into the plaintiff's house and seizing and carrying away certain brandy belonging to him, with the vessel containing it. The defense was that the act was done under the direction and in aid of one Charles Benjamin, a constable of the town of Danbury, in the execution of a warrant issued by a justice of the peace of that town, directing the constable to search for and seize certain liquors and the vessels in which they were contained.

On the trial to the jury the defendant offered in evidence a document purporting to be the record of the proceedings before the justice, to the admission of which the plaintiff objected on the ground that it was not an authenticated copy, but the court admitted it. The document contained the complaint to the justice, the warrant for the seizure of the liquor, the officer's return thereon, and the judgment of the justice, but did not contain any order of notice issued by the justice after the seizure, nor any return of the officer upon such order. The justice decided that the liquor was not forfeited. In the record of the judgment it was found that "the said Henry Gray and all others whom it might concern were duly summoned to appear before the court." The warrant was as follows :—

"To the Sheriff of the County of Fairfield, his Deputy, or to either Constable of the town of Danbury, in said County—GREETING: Whereas Samuel G. Raymond, Edward S. Davis, and Charles H. Hoyt, residents in said town of Danbury, being of good moral character, and of full age, have before me made their written complaint that in a certain place in said town, to wit, in a certain shop or building, situate in said Danbury, on the easterly side of Mill Plain pond, so called, being the same formerly and now used as a manufactory of sarsaparilla, and more recently used as and for a segar manufactory, and located within six or eight rods of said pond; also, in another building situate a few rods north-westerly from the first described building, and nearer to the said pond, and used by Henry Gray as and for a saloon for the sale of segars, candies and other articles of merchandize; also, in a barn and shed, situate a little north-east of the building last before described, and used by said Gray; also, in the ice-house, situate on the brink of said pond; also, in the dwelling-house, situate in an easterly direction from the barn above described, on the west side of the highway leading from the grave yard in said Mill Plain to Miry Brook, so called, said dwelling-house being at or near the corner where the road leading down to said pond intersects said highway, and the same is occupied by the family of F. D. Hamilton

and others; and all of said buildings are in said Danbury;—contains liquors, to wit, thirty gallons rum, thirty gallons gin, thirty gallons brandy, thirty gallons wine, and thirty gallons of other spirits, are owned or kept by the said Gray, and are intended by said Gray to be sold in violation of the act of 1854, entitled An Act for the Suppression of Intemperance; and whereas said complainants have before me made solemn oath that they have reason to believe and do believe to be substantially true the allegations in said complaint; and whereas I do find that probable cause exists for said complaint; and the said complainants having before me made solemn oath that they have reason to believe, and do believe, that within one month next before the making of said complaint, spirituous or intoxicating liquor, or mixed liquor a part of which is spirituous or intoxicating, has been sold in violation of the act of 1854, for the suppression of intemperance, in said house, or in some dependency thereof, by the person accused in the complaint aforesaid, or by his consent or permission, and upon the facts and circumstances disclosed by said complainants to me, I am of opinion that they have adequate cause for such belief:—Now therefore, by authority of the state of Connecticut, you are hereby commanded to search thoroughly the said buildings and places, and to seize said liquors and the vessels containing them, and securely keep the same until final action be had thereon. Hereof fail not, &c."

The defendant, in connection with the above warrant and the return of the officer thereon and the other proceedings in the case before the justice, offered evidence to show that the liquor was in fact taken under the warrant, and in the dwelling house described in the warrant as occupied by F. D. Hamilton and others. The plaintiff claimed that the house was occupied by himself and family, and that the brandy taken, with the vessel containing it, belonged to him, and not to Henry Gray who was named in the warrant; and asked the court to charge the jury that, if these facts were proved, the warrant was no justification for the act of the defendant.

He also claimed that the warrant was void upon its face. The court charged the jury that if they should find the facts, with regard to the place where the liquor was taken and the ownership of it, to be as claimed by the plaintiff, the evidence offered by the defendant constituted no justification.

The jury returned a verdict for the plaintiff and the defendant moved for a new trial.

*Dutton* and *Averill*, in support of the motion.

1. The document offered in evidence by the defendant was objected to because not authenticated as a copy. But it was not objected to as not being the original record, and from the motion it does not appear that it was not the original. This court will notice no objection not made in the court below. As an original, it was the best evidence and clearly was admissible. A copy is admissible only because of the difficulty, and in most cases the impropriety, of taking public records from the places where they are kept, but where the original is brought into court no objection can be conceived to its admissibility.

2. The process is objected to as a justification of the defendant, because it does not set forth the subsequent proceedings with regard to the disposition of the liquor seized. But the warrant does not become illegal, if those proceedings are entirely omitted. The justice had authority to issue the warrant, and the officer was bound to obey it, and his acts in doing so can not become illegal by reason of any subsequent omission on the part of the magistrate.

3. The warrant is not void on its face because it directs the search of several places. All that the constitution requires in this respect is, that no warrant shall issue to search any place "without describing it as nearly as may be." Const. of Conn., art. 1, § 8. So long as the place searched is thus described, the proceeding is not affected by the fact that other places are also described. A general search warrant, which the law condemns and which this provision of the constitution was intended to prevent, is a warrant to search *all places*, without describing them. It is better in

every respect that several places should be described in and searched by authority of one warrant, than that several distinct warrants, involving greatly increased expense, should be issued together.

4. But the great question in the case, and one of much public interest, is whether the officer was justified by this warrant in taking the property of John C. Gray, the plaintiff, instead of the property of Henry Gray, who is named in the warrant. It is claimed on the other side, and so the court below held, that the warrant describes the liquors as belonging to Henry Gray, and that therefore the officer could take no liquors that did not answer that description. We say that the warrant does not so describe the liquors. The language of the warrant on this subject is mere language of *averment*, not of *description*. If the warrant, after describing the liquors in other respects, had proceeded to say, "which *are owned* by Henry Gray," it would still be merely averment and not description. But it does not use even so strong an expression as this. It merely states that the complainants *believe* that the liquor is so owned. The distinction between an averment and description is stated in the case of *Watson* v. *Watson*, 9 Conn., 140. See also *Belt* v. *Broadbent*, 3 T. R., 183, 185. The proceeding here is *in rem*. Such a proceeding is wholly different from an attachment of property in an ordinary action at law. In the latter case the officer must find the property of the defendant, and, if he takes that of any other person, does so at his peril. In the former case the object sought by the officer is the specific property libelled. The ownership is of no consequence. If in the present case the officer was to decide as to the ownership of the property before taking it, and take none but that of Henry Gray, why does the statute require a general notice to be issued by the justice to all parties interested, to come in and defend the liquor? Further, the warrant speaks of the liquors as *owned or kept* by Henry Gray, so that, though owned by John C. Gray, they may have been kept by Henry Gray. If the language of the warrant is to be regarded as that of description, yet the case falls within the rule that *falsa*

*descriptio non nocet;* that is, that where there is sufficient description to identify the property, further misdescription is harmless. 3 Phill. Ev., (C. & H.) 1369. *Smith* v. *Smith,* 1 Edw. Ch., 189. *Conolly* v. *Pardon,* 1 Paige, 291. *Smith* v. *Smith,* 4 id., 271.

*Hawley* and *Taylor,* contra.

1. The document offered in evidence was not admissible because not an authenticated copy of the record. It does not appear that it was the original record, and if it was, it would not have been admissible. 1 Greenl. Ev., § 501.

2. The record, if the document be regarded as such, was not admissible in justification of the defendant, because not complete. It did not show that any notice was ordered after the seizure of the liquors, or any return made to such order of notice. Without these the defendant would not be justified. Besides, a record can not be proved by a mere part of the record.

3. The warrant is void as being too general. It amounts almost to a general search warrant. It directs the search of five distinct places. And the place where this liquor was taken is not described as nearly as it might be. The dwelling house is described as occupied by F. D. Hamilton *and others.* It might have been ascertained who these others were. The description of the liquors is also too general.

4. If the warrant is good in itself, yet it did not authorize the taking of the property of John C. Gray. The 12th section of the act requires a description in the complaint and warrant, as nearly as may be, not only of the liquor and of the place where it is kept, but also of the person owning and keeping it. And the complainants and the justice have here undertaken to comply with the law in all these matters of description. The liquors are said in the complaint to be owned and kept by Henry Gray, and to be intended for sale in violation of the act, and a warrant is prayed for to search for and seize *said* liquors. The warrant thereupon issues, counting on the complaint and directing the officer to search the *said* buildings and to seize the *said* liquors. Will it be

claimed that he could search *other places?* Why not, as well as to take *other liquors?* The officer must ascertain at his peril whether the property is that which he is directed to take. It is imposing upon him a no more difficult duty than in every case of the attachment of personal property. On a writ against A, he must ascertain at his peril whether the property which he attaches belongs to A. It has been held that where the property of A and B is mingled, and B refuses to point out his own property, yet the officer must distinguish between them at his peril. The same principle is well established with regard to ordinary search warrants, upon one of which, directing the officer to take the property of A, it was never supposed that he could take that of B. *Grumon* v. *Raymond,* 1 Conn., 40. The constitution requires a particular description of the property to be taken, as well as of the place to be searched. Const., art. 1, § 8. See also *Delanoy* v. *Cannon,* 10 East., 328, and *Scandover* v. *Warne,* 2 Camp. 270.

SANFORD, J. This is an action of trespass for breaking into the plaintiff's house, and taking away a jar, and a small quantity of brandy, belonging to the plaintiff. The defendant justified as the servant of a constable in the execution of a warrant directed to the officer, requiring him to search for and seize the liquor and vessel containing it, under the twelfth section of the act for the suppression of intemperance ; and upon the trial he offered in evidence a paper purporting to be the original complaint, and the warrant issued thereon, with the officer's return of the seizure of the liquor, and the judgment of the justice.

The plaintiff objected to the reception of the papers in evidence, because they were not copies instead of original documents. The superior court permitted them to go to the jury, but instructed the jury that they afforded to the defendant no justification for the trespass complained of. We entertain no doubt but that the objection to the evidence was properly overruled.

The object being to lay before the triers the real contents

of the record, it would be absurd to hold that the best possible evidence, when adduced, should be excluded, because inferior evidence, by copy, would be admissible. Mr. Greenleaf, in his Treatise on Evidence vol. 1, § 502, indeed says, "the record itself is produced only when the case is in the same court whose record it is, or when it is the subject of proceedings in a superior court." But he does not say, and it is obvious he does not mean, that the contents of a record can not, in any court, be proved by the original record itself if it can be produced, but only to state the manner in which such proof may be, and usually is, made. "Copies of records are admitted as the best *producible* evidence, because the originals are, for security, preserved in public depositories, and can not be removed from place to place to serve a private purpose." 1 Phil. Ev., 383, (4 Ed.) "The reason of admitting a copy to be evidence, is the inconvenience to the public of removing such documents (records) which may be wanted in two places at the same time." 1 Stark Ev., 151. But says the same author, "A record may be proved, first, by mere production without more, or, secondly, by the copy." Ib.

The warrant then, being properly in evidence before the jury, the jury should have been instructed that, notwithstanding the plaintiff's objections to it, it was sufficient to justify the entry and seizure complained of.

It is claimed that the record is imperfect, or incomplete, inasmuch as it does not set forth a notice, such as is required by the thirteenth section of the act, and the evidence that such notice was served as the act requires. But the justice found, and his record states, that Henry Gray, the person charged in the complaint as the owner or keeper of the liquor, and all others concerned, were duly, (that is, as the law requires,) summoned to appear," &c. That is enough. The law indeed requires that "the justice shall cause a notice to be posted," &c., but does not require that he shall cause it to be done by the hands of any officer or particular agent. The form of notice which the act prescribes is not that of a writ, or returnable process of any kind, and contains

no direction to an officer for service, and no command to return it.

But the question is not whether the proceedings subsequent to the return of the warrant were regular or not, but whether the warrant at the time of its execution was a valid precept, which the officer was bound to obey. If it was, the officer, and the defendant in his service, were justified in executing it, whatever irregularities might have intervened in the proceedings after its return. *Watson* v. *Watson*, 9 Conn., 140. *Grumon* v. *Raymond*, 1 id., 40:

The only objection made to the warrant is, that it directs the search to be made in several buildings, when it should have been confined to one. And we are referred to the 8th section of the first article of the constitution of this state, in support of this objection; and to a like provision in the constitution of the United States. The articles referred to, provide—"that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches or seizures; and [that] no warrant to search any place or seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." The constitutional provision just recited, was obviously intended mainly for the security of the citizen, that his possessions might not be wantonly invaded, at the discretion, caprice or malice, either of private individuals, or of the ministers of the law. But a separate warrant for each suspected place to be searched is not called for, either by the letter or spirit of the constitution, nor requisite for the protection of the public peace, or individual security. To require it would occasion useless delay and expense, and tend to defeat the salutary objects of the law.

But the plaintiff claims, that the warrant in this case was not directed against, and did not authorize the seizure of, *his* liquor, nor an entry into any house in *his* possession, but only the seizure of liquors owned or kept, and intended to be sold, by Henry Gray, and an entry into a dwelling-house occupied by the family of F. D. Hamilton and others, as stated in said warrant;—the substance of the claim being that what is said

in the warrant, regarding the ownership and custody of the liquors, and the occupancy of the dwelling-house, is matter of description, essential to the identification of the property, and, if untrue in fact, defeats the justification.

And we remark that, in regard to the only issue to be tried upon the return of the warrant, to wit, whether the liquor seized was kept for sale in violation of the law or not, it was altogether immaterial whether Henry Gray, or the defendant, or some other person, owned or kept it, and equally immaterial whether the family of F. D. Hamilton and others, or the plaintiff alone, or some other person, occupied the dwelling-house where that liquor was found and seized. Unless therefore these allegations form essential parts of the description of the property, this claim of the plaintiff can not be sustained.

The complaint, which is recited in the warrant, charges that in a certain place in Danbury, "to wit,   *   *   *   * also at a dwelling house situate in an easterly direction from the barn above described, on the west side of the highway leading from the grave-yard near said pond to Miry Brook, (a place so called,) said dwelling-house being at or near the corner where the road leading to the pond intersects said highway, and the same is occupied by the family of F. D. Hamilton and others," &c., "certain liquors, to wit, thirty gallons rum, thirty gallons wine, thirty gallons gin, thirty gallons brandy, and thirty gallons other spirits, are owned or kept in each of said described buildings, by the said Henry Gray of the town of Danbury aforesaid, and are intended by said Gray to be sold in violation of the act of 1854," &c. Here, there is no connection whatever, in sense, between the description, properly so called, of the dwelling-house, and the description of its occupants. The description of the house is particular and complete, and, for any thing that appears, entirely accurate, and amply adequate for its identification, and we think the certainty and sufficiency of that description in no degree affected by the erroneous and immaterial averment in relation to the occupants of the house. So in regard to the liquor. The allegations relating to its ownership and custody, and the intent with which it was kept, make no part

of its description. And we think the description given in the warrant, though general, is sufficient—it no where appearing that, at the time the complaint was made and the warrant issued, it might have been made more particular and exact.

The language of the constitution is not, that (under all circumstances, in every case,) the things shall be described with such particularity and accuracy as to preclude the possibility of mistake, but only "*as nearly as may be*"—that is, as nearly as the circumstances will admit. In general, the place may, and therefore must, be described with such reasonable particularity as to make it distinguishable from all other places. So the owner of stolen goods, which have marks, natural or artificial, by which the goods may be distinguished and identified, may perhaps be presumed cognizant of those marks; these may be, therefore, generally specified in the warrant issued at his instance. But suppose the article has no mark by which it can be identified, as wheat in bulk, would it be possible, until after access to the wheat obtained by virtue of the warrant, to describe it otherwise than by quantity and name? How would it aid the officer in his duty, to add to the description of such an article, that it was kept and intended to be used or sold by an individual named? Our statute for the prevention of gaming, (Rev. Stat., tit. 22, § 4,) provides that whenever any informing officer, or the selectmen of any town," &c. "shall give information to two justices, that he or they have cause to suspect that any billiard table or E. O. table is kept or concealed in any house," &c., "such justices may issue their warrant, directed to any proper officer, requiring him to enter such house and to search for such table, and on finding the same to seize and carry it away," &c. So by statute (Rev. Stat., tit. 6, § 189,) "upon complaint by a grandjuror, &c. to a judge of the supreme court of errors, that he or they suspect, or have cause to suspect, that any house," &c. "is used for the purpose of printing, binding, depositing," &c. "any book, print," &c. "of an obscene or licentious character, or as a common gaming house," &c.,

"such judge may issue his warrant commanding any proper officer to enter into any such house," &c. "and also to take into his custody all the materials and instruments for gaming as aforesaid, and all such obscene books and licentious prints," &c. "and to keep the same that they may be forthcoming to be dealt with and disposed of according to law." How could the billiard or E. O. table be described but by its general name? Suppose that it was stated in the warrant that the table was owned or kept by A B, would the officer be liable in trespass for taking it, if it should finally turn out that it was in fact owned and kept, not by A B but by C D? And would it not be sufficient in the warrant, to describe the things spoken of in the last mentioned statute, by their general names, as implements for gaming, and books and prints, &c. of an obscene and licentious character? The designation of the place, indeed, operates to circumscribe, by visible, tangible and certain boundaries, the limits of the search, and so makes an element in, or, more properly, aids, the description of the thing sought for. But the allegations regarding ownership, custody, and criminal intent, are of an entirely different character. They are averments of the existence of facts, but not directly, or by operation, in any sense descriptive of the thing to which those facts relate.

Suppose the warrant described the liquor by specific name and quantity, and the vessel containing it by size, form, material, color, artificial marks, &c. with "certainty to a certain intent in every particular," but had added, as in this warrant, that the liquor was owned or kept and intended to be sold by H. G. And suppose that the officer found, in the place designated in his warrant, a cask of liquor answering to this description in every particular, but in the custody of a stranger who claimed to be its owner, or in the actual custody of the plaintiff, and intended to be sold by him. Or suppose the officer finds, in the place designated, a cask of liquor answering to the description in the warrant, but not in the visible custody or possession of any one. Could the officer be subjected as a trespasser for taking the cask of liquor, in either of the cases put, if it should afterwards appear that the alle-

gations in his warrant regarding ownership, custody, or criminal intent, were false? We think he could not.

Upon the whole, we think these allegations no part of the description of the liquor, that it is immaterial whether they were true or false, that the description of the liquor was sufficient, and consequently that the charge to the jury was wrong. We therefore advise a new trial.

In this opinion the other judges concurred.

New trial advised.