Ellsworth, J.
We are satisfied that there must.be a new trial of this case. Not that we perceive any error in the instructions of the court to the jury with regard to the plaintiff’s title to the goods which he acquired under his bill of sale; for although the consideration, or debt for spirituous liquors, would not be legal and sufficient here, it was good in New York, where the debt was contracted and the goods delivered. Nor that we perceive any error in the instructions given with regard to the consideration and character of the mortgage of Francis E. Wheeler, under which some of the goods were taken and carried away. So far we think the charge is open to no exception. But as to the goods which were taken and held under the attachment, and not under the mortgage, and which were after-wards sold on the execution, we are constrained' to think the charge not entirely correct. The error lies in giving to the sale in Bridgeport an undue effect in avoiding the attachment in Birmingham, and making that act of the officer a trespass ab initio.
We are not able to see why the sale on the execution, or the previous - transportation of the goods from Birmingham to’ *426 Bridgeport for safe keeping, which has been complained of on the trial, should be held to have any such effect on the attachment. But such must be the effect, or else the plainly *522 ] *tiff can not sustain his action for a trespass, for he^ makes that attachment the distinct ground of his action ; and although he has, in his declaration, a count for trover under our statute, yet he goes for one and the same cause of action, and whatever he proves as taking place after the attachment and removal at Birmingham, is of no importance, except as imparting a character to the original taking as the ground of his action.
The principal question argued by counsel, as to the proper place for selling goods first “ taken” on attachment, and after-wards on execution in another and different society, is one attended with considerable difficulty, and we think there may be some diversity of opinion upon it. We do not feel called upon to decide at this time what the law is on this subject, for, upon the facts here proved and admitted, the point is not important to the result, and we are strongly impressed with the belief that it will not become important on another trial, should another take place.
That part of the charge which is responsive to the request of Wheeler, one of the defendants, that if the goods were lawfully attached, and the attachment, as an attachment, fully perfected and consummated, he could not be made a trespasser ab initio, merely because he happened to buy some of them at auction when they were sold on the execution, does not, we think, contain sound law. But we shall be better able to comprehend the bearing of this request, and the character of the response made to it by the court, upon looking at the case as it stood, admitted and proved, before the jury.
We will premise what we have to say on the doctrine of the charge, by remarking, that if the plaintiff was correct in his claim as to the facts, to wit, that his bill of sale was good and the sale accompanied by an open, substantial possession, the defendants were liable, of course, for whatever they took and carried away which was not embraced in the mortgage, and even for that too, if the mortgage was not a valid one; for, in such case, the property taken was not the property of Thompson & Jackson, the debtors in the attach- [ *523 ] *ment, but of Carter, the plaintiff. We must then see how the law will be if the possession was not changed, as the defendants insist it was not, and therefore the goods liable to be attached by a creditor of Thompson & Jackson.
*427 The plaintiff insists that, even if' he did not take possession as the law requires, the hill of sale was good as to Thompson & Jackson, and every body else who did not attach the goods, and proceed with his process to- a perfect consummation of the attachment, without neglect, omission or default in the eye of the law, for otherwise such interference would be the act of a stranger, who cannot insist upon a possession in the vendee as a requisite of a valid sale. Be'it so, that this plaintiff may scan this proceeding and. take advantage of any mistake or neglect in the officer that Thompson & Jackson could have taken advantage of had they wished to do so, and had not waived their right by acquiescence or neglect, (which is going quite far enough certainly ;) the question will then be, what is the official default apparent on the record ? When, where, by what act or omission to act, after the attachment, has the officer who made the attachment forfeited the protection of the law, and made- himself and his assistant trespassers for that first act ? And let it be remembered that this first taking is the only trespass complained of by the plaintiff.
If any defaults are proved to have occurred afterwards, they are not to be treated as distinct grounds of action, for there-can be but one cause of action under the statute, and they can be viewed only in their relation to the first taking, and as going to prove that the attachment, as a process of the law, was not served and perfected as the iaw requires.
First, then, it is said the property attached was carried out of the society within which it was attached, to the city of Bridgeport, and this it is claimed the law does not permit. We do not assent to this proposition as a general one. An officer may always remove the property which he has attached, and for the safe keeping of which he is responsible, to a proper place of custody ; and especially may this be done by a' person specially deputed by a magistrate for *the service of [ *524 ] an attachment, as Clark was. His official character had no local limits, and in the exercise of his best judgment he doubtless supposed that the goods could be more conveniently, safely, and economically kept in Bridgeport than in Birmingham, and, if so, he certainly had a right to take them there to be kept. Besides, it :is not certain that the defendants in the attachment did not- assent to the removal of the goods to Bridgeport, and even request it, which of course would be a complete answer to the-objection. The defendants claimed that it was so, and introduced proof to substantiate the claim, and they were entitled to the benefit of this circumstance, if it was made out to the* satisfaction of the jury.
*428 Again, it is said the goods were sold in Bridgeport, whereas, since they were attached in Birmingham, they could be sold no where else. This objection, I conceive, grows out of an entire misapprehension of the case, although the question might arise and become important under other circumstances. Clark, as we have already said, attached the goods under a special deputation from a justice of the peace. Of course he was an officer for no further purpose, nor clothed with power for further duty, than to serve and consummate his attachment, which could be done by returning the writ duly indorsed and by carefully preserving the goods until they were wanted on the execution. This was done, and here ended his attachment of the goods. Nothing remained to be done, by the neglect of which the officer or his assistant could be converted into trespassers ab initio. Nor does it make any difference that the execution afterwards was sent to Clark, and he was directed, as a constable, to levy upon the goods in his precinct, where the goods were stored, and where alone, as constable of Bridgeport, he had power to levy, advertise and sell. These acts are wholly distinct from the attachment of the goods, and whether defensible or not, can not for a moment be allowed to prejudice Wheeler, the- assistant in the attachment. We may, perhaps, go further, and say that Clark, - so far as he needs a justification for obeying the exe- [ *525 ] cution which directed *him to levy on and sell the goods found within his precinct, (and he could only levy on and sell them within his precinct,) had no right, and certainly was not obliged, to speculate as to what might have been proper upon a view of all the facts. The execution was alone his commission. The case of Watson v. Watson, 9 Conn., 140, is a much stronger one than this; and so is that of Gray v. Davis, 27 Conn., 447.
We do not decide, as we have already intimated, the question so elaborately argued at the bar, whether goods must be levied upon and sold in the society in which they were at first attached. This is the general practice no doubt; perhaps the statute requires it; but the word “ taken,” which is the expression that gives rise to the question, (Rev. Stat., tit. 1, § 175,) is not necessarily confined in its application to the taking on the attachment. Where there is no fraud or unfairness to affect the question, it is one on which something can be said in favor of either view. But thus far we do mean to decide, that this attachment was perfected and ended, as to -the attaching officer, by the acts already mentioned, and that a sale in Bridgeport on the execution could not make Clark a trespasser ab initio.
If this be true as to the officer, much more is it so as to his. *429 assistant, who only aided him in attaching the goods and removing them to Bridgeport. It would be manifestly unjust to hold him responsible for proceedings on the execution, and still more, to make him a trespasser ab initio, because he happened to purchase some of the goods when they were sold on the execution. He had as good a right to purchase them as any body else; and even were it true that he acquired no title to the articles he purchased, he would only be liable for them in trover, after demand and refusal, as the purchase and conversion, having no connection with the levy, or with the original attáchment and removal of the goods, would not be acts of trespass in any event whatever.
There seems to me, so far as I can judge from the record, to have been a further error, in the rule of damages adopted on the trial, a point which did not receive from the counsel or the court the attention it demanded.
*The superior court at New Haven, having juris- [ *526 ] diction, ordered Clark to make sale, at Bridgeport, of so much of the property embraced in the mortgage as would cancel the mortgage debt and costs. He did so, and paid and applied accordingly $542.89. The rest of the mortgaged goods, together with what was levied on under the execution, were sold at the post for $101.98, and money applied on the execution. Now it is difficult for me to see how, on any theory, Clark can be held liable in damages in the present suit, for the goods he sold on the mortgage. He only sold the specific property which he was required by the decree to sell. It can make no difference that the mortgage was originally invalid. The court had found that there was $542.39 due upon it, and had ordered him to sell the property and pay over that amount to the mortgagee. And now, when he has done it, he can not, here nor elsewhere, be compelled to pay the money a second time to any one. All the goods which he took he sold fairly, under the mortgage or the execution, and they all brought only $644.37; $542.39 of this money he applied on the mortgage and the rest on the execution ; and yet the verdict is for $625, which I can not but think wholly wrong. The officer has been compelled to pay here the very money which the superior court ordered him to pay over, and which he did pay over on the mortgage ; which is contrary to the law as laid down in • the cases of Watson v. Watson, and Gray v. Davis, already cited. And what makes it worse, Wheeler, the other defendant, is made liable in the verdict for the same sum. On another trial, should one be had, this difficulty may be cleared up ; but as the case stands, it strikes me as being a very substantial one, and quite serious in its consequences.
*430 We advise a new trial.
In this opinion the other judges concurred.
New trial advised.