WILLIAMS *against* BRACE.

To constitute a legal assembly of the court of common council of the city of *Hart-ford*, for the transaction of business, a majority of all the members, is sufficient, without a majority of each description of persons composing such court.

A railing on the inner side of a side-walk, for the safety of the public travel, not being a part of such side-walk, the court of common council are not empowered, by virtue of the authority given them by law in relation to side-walks, to order such railing to be erected, by the proprietor of the adjoining land.

And an assessment on such proprietor, for the expense of erecting such railing, is void.

Where an assessment is made on the proprietors of adjoining land, for the expense of building and flagging a side-walk; and such proprietors are husband and wife, he being tenant for life, and she tenant in fee; the sum assessed must be apportioned to each; otherwise, the assessment is void.

Where the mayor of a city, by direction of the court of common council, signed a warrant for the collection of an illegal assessment; it was held, that he was liable in tresspass for property taken under such warrant.

This was an action of trespass, for the taking of a horse, the property of the plaintiff, by the command of the defendant.

The defendant pleaded in bar the following facts. He is, and for many years past has been, including the whole period in question, mayor of the city of *Hartford.* During this period, the freemen of the city, at their annual meetings, elected four aldermen and a common council of twelve persons. At a meeting of the court of common council, on the 7th of *July,* 1820, at which were present the mayor, three aldermen and five of the common council, a side-walk was established on the *North* side of *State-street,* from the *East* side of *Front-street* to the *West* side of *Commerce-street,* ten feet wide, and of a certain height; and the court of common council ordered, that such side-walk should be built, and flagged with stone four feet wide, by the proprietors of the adjoining land, opposite their respective premises, by the 10th day of *November* then next. By an order of the court of common council, at a meeting held on the 25th of *March,* 1822, at which four aldermen, and ten of the common council were present, the time for building the side-walk was extended to the 1st day of *September,* 1822; and by an order passed at another meeting, held on the 16th of *August,* 1822, at which the mayor, three aldermen and six of the common council were present, the time was extended to the 15th of *October,* 1822. Due notice of these orders was given to the plaintiff. Another meeting of the court of common council was held on the 21st of *October,* 1822, at which the mayor, three aldermen and seven of the common council were present;

when said court found, that their order to build and flagg said side-walk had not been complied with, and ordered, that said side-walk should be forthwith built and flagged pursuant to said order of the 7th of *July*, 1820, and appointed *Thomas Bull*, a citizen, to build and flagg said side-walk accordingly. This he shortly afterwards accomplished. On the 31st of *December*, 1822, a court of common council was held, at which the mayor, four aldermen and five of the common council were present ; when said *Bull* made a report of his doings, and rendered his account of monies disbursed, and of services rendered, by him, in building and flagging said side-walk. In this account was an item of 12 dollars, 50 cents, for a railing on the inner side of the flagging for the safety of the public travel. The court of common council found, "that said *Bull* had truly and justly charged the sum of 43 dollars, 9 cents, to *Ezekiel Williams*, [the plaintiff] for expenses and labour bestowed by said *Bull* in building that part of said side-walk and railing which is in front of said *Williams'* land ;" which sum of 43 dollars, 9 cents, was in part made up of a proportional part of said sum of 12 dollars, 50 cents ; and thereupon ordered the same to be paid by the plaintiff. During these transactions, the plaintiff in fact was, and still is, the proprietor of a life estate, (the fee being in his wife, who is still living) of the land fronting on the line, and on that side, of the street, where the side-walk was laid out and built. The court of common council, at a legal meeting, on the 24th of *April*, 1823, directed the mayor to sign and issue a warrant to collect said sum of the plaintiff ; and thereupon the defendant, as mayor of said city, did issue a warrant for the collection of said sum, dated the 24th day of *April*, 1823, returnable in sixty days ; by virtue of which, the collector, to whom it was directed, on the 27th of *May*, 1823, took the horse mentioned in the plaintiff's declaration ; which is the same supposed trespass complained of therein.

To this plea the plaintiff demurred ; and the case was reserved for the advice of all the Judges.

*T. S. Williams* and *W. W. Ellsworth*, in support of the demurrer, contended, 1. That the court of common council, on the 7th of *July*, 1820, when the original order for the building and flagging of the side-walk was passed, and on the 31st of *December*, 1823, when the plaintiff was assessed, was not legally assembled, because one of the integral parts of that body was not present or represented. It is a well established rule of

*Hartford,*
*June,*
*1824.*

*Williams.*
*v.*
*Brace.*

law, that where the body authorized to exercise the power in question consists of several distinct integral parts, a majority of each such integral part must be present, in order to constitute a legal assembly of the whole ; though a majority of those present, when legally assembled, may bind the rest. *The King* v. *Miller,* 6 *Term Rep.* 268. *The King* v. *Bellringer,* 4 *Term Rep.* 810. *The King* v. *Morris,* 4 *East,* 17. *Grindley* & al. v. *Barker* & al. 1 *Bos. & Pull.* 229. 237, 8. *The King* v. *Richard Bower,* 1 *Barn. & Cresw.* 492. *Com. Dig. tit.* Franchises. F. 20. 21. The charter provides, that " there shall be a court of common council, to be composed of the mayor, aldermen and common council." " *Stat.* 119. *tit.* 15. *c.* 1. *s.* 20. To the court of common council, thus composed, is subsequently given the power to compel the owners of adjoining lands to raise and flagg side-walks. *Stat.* 124. *tit.* 15. *c.* 3. *s.* 1. 2. Can there be a legal meeting of this body, in the absence of both the mayor and aldermen ? Yet nine of the common council alone would constitute a majority of the whole body. The legislature designate the members of the court of common council, by *classes*—not by naming or describing them *as individuals.* No class can be represented in the meeting, by a less number than a majority of that class.

2. That the sum assessed should have been apportioned between the plaintiff, who had a life estate only in the land, and his wife, the tenant in fee. *Stat.* 125. *tit.* 15. *c.* 3. *s.* 2. (*a*) If the tenant in fee had been any other person than the plaintiff's wife, there could not be a doubt on the subject. Does this circumstance affect the result ? The tenant for life and the tenant in fee, notwithstanding the marriage, have distinct interests. If the assessment had been apportioned, the sum assessed in respect of the wife's interest, if not collected in the life-time of the husband, would have become a debt against her alone.

3. That the assessment was illegal, because it included the expense of a railing on the inner side of the flagging. In the first place, the court of common council had no authority to subject the proprietors of the land to this expense ; their authority being confined to the raising or levelling, and to the pav-

(*a*) The words are these : " And in cases where the lands or buildings fronting on such side-walks shall be holden for a term of years, or any other estate less than fee-simple, said courts of common council may, by their order, apportion, such manner as they shall judge right, the expense of raising or levelling, and paving or flagging such side-walk, among the different persons having an interest in the lands or buildings holden as aforesaid."

ing or flagging of side-walks.   *Stat.* 125. *tit.* 15. *c.* 3. *s.* 2. 3.   In the next place, the order of the court of common council did not, in fact, require this railing to be erected.

4. That if the assessment on which the warrant was founded, was illegal, the warrant itself was, of course, illegal, and formed no justification of the trespass complained of.   *Stetson* v. *Kempton* & al. 13 *Mass. Rep.* 272. 282.

*N. Smith* and *Mitchell*, contra, contended, 1. That there was a legal assembly of the court of common council, when the orders in question were passed ; that clause of the charter, which designates who shall be members of the court of common council, being merely descriptive of the persons, by the offices which they hold, and not requiring them to be present as three distinct branches.   First, the charter requires *a majority of the members,*—not a majority of each branch,—to exercise the powers delegated to the court of common council.   *Stat.* 132. *tit.* 34. *c.* 1. *s.* 31. ed. 1808.   Secondly, the three branches have no distinct separate powers.   Thirdly, the court of common council, when organized, transact business without reference to quorums of branches.   It would be absurd to organize in one capacity, and transact business in another.   Fourthly, it would be very inconvenient, and would produce great embarrassment in business, to require the attendance of three quorums, instead of one.   The absence of the mayor, or of two of the aldermen, would effectually obstruct all proceedings.   Fifthly, it has been the invariable practice, from the incorporation of the city to this time, to consider a majority of the members as a legal assembly.   A similar practice has prevailed, with an equal degree of uniformity, in the other cities.

2. That the assessment was not void, for want of an apportionment of the expense.   First, the statute is not *imperative* on this subject : it only provides, that the court of common council *may* apportion the expense, in such manner as they judge right.   *Stat.* 125. *tit.* 15. *c.* 3. *s.* 2   Secondly, husband and wife are not persons having distinct interests within the meaning of the statute.   General legislative acts contemplate the wife's property as the husband's.   Thirdly, it would be nugatory to assess both, when one alone is to pay.   Fourthly, it does not appear, but that the assessment made was in respect of the husband's life estate only.   He cannot complain, that his wife was not assessed in a further sum, in respect of her interest.

3. That the assessment was not void, by reason of its including a trifling sum for the erection of a railing. The statute authorizes the court of common council to order a *convenient* side-walk to be made. The court of common council did order the plaintiff to make a side-walk of a certain width and height; and it appears, that the safety of the public travel required a railing on the inner side of it. The railing, then, is to be considered as a part, and a necessary part, of the side-walk.

4. That at any rate, trespass would not lie against the mayor, who signed the warrant. He acted by the direction of the court of common council, without knowledge of any defect, informality or irregularity. He did nothing more than to perform an act of official duty. For this he is not liable as a tort-feasor. *Dillingham* v. *Snow* & al. 5 *Mass. Rep.* 547. *Henderson* v. *Brown* & al. 1 *Caines* 92. The statute has provided a remedy, for persons aggrieved by the doings of the court of common council; which is, by complaint to the county count. *Stat.* 126. *tit.* 15. *c.* 3. *s.* 5.

Hosmer, Ch. J. From the motion before the court, it appears, that the mayor, aldermen and common council, were duly notified to assemble ; and that a majority of the whole number was present at all times; although at one or two meetings, there was not the greater number of the members of the common council. Where a mode of proceeding is directed by law, it must be precisely pursued, or the acts of the persons assembled will be invalid. It is enacted, by the statute, *p.* 132. *tit.* 34. *c.* 1. *s.* 31. ed. 1808. "That there shall be a court of common council of said city, of which the mayor, aldermen and common council of said city shall be members, who, or a majority of them, shall have power to make by-laws," &c. By analogy to the cases in *Westminster-Hall*, cited in the argument, it would seem, that the mayor, the aldermen, and the common council, in the formation of the court of common council, ought to be considered as distinct integral parts. These determinations are founded, partly on usage, and partly on a presumed allusion to the form of the *English* government : and hence cannot, with propriety, be resorted to, in the construction of one of our statutes. Our law must be expounded from the popular meaning of the expressions used, by the legislature, to indicate their intention. It has been argued for the defendant, that by the words "the mayor, aldermen and common council," was meant,

by a *descriptio personarum*, to designate the individuals of these respective bodies; and for this there is much reason, not only from the phraseology of the law, but more particularly, because the expression has reference to *a court*. Generally speaking, courts are not comprised of distinct integral parts, but of persons authorized individually to act. On this subject, however, there is one consideration so imperiously conclusive as to preclude the necessity of further discussion. From the incorporation of the city of *Hartford,* in 1784. to the present time, the court of common council has invariably acted on the principle, that the members convened were individuals, and not distinct integral parts ; and the same assertion is equally true in respect of all the courts of common council in the respective cities within the state. *Expositio contemporanea est fortissima in lege.* I entertain no doubt but the court of common council, during the entire proceeding relative to the assessment, voted in a legal manner.

To their acts, however, so far as they relate to the plaintiff, there are two undoubted objections.

In the first place, the court of common council had by law no right to order the erection of a railing ; nor did they make such order. Notwithstanding this, the expense of a railing forms a part of the assessment made.

In the next place, the order on the plaintiff to pay the whole assessment for the improvement in front of his wife's land, was an assumption of right, without any colour of authority. The assessment should have been apportioned to each, in proportion to the right of property ; and the sum justly due from the plaintiff, as tenant for life, should have been directed to be paid by him ; while the amount due from the tenant in fee-simple, should have been assessed on her. For the debts of the wife anterior to the marriage, and those devolved on her by law afterwards, the husband is responsible, if they are collected *during the coverture*. But an action for the recovery of the demand, shewing the title of the plaintiff, must be instituted against both, and the judgment be rendered against them jointly. It is true, that the judgment puts a conclusive obligation on the husband, from the nature of that legal act ; but this cannot be affirmed of an assessment made by a court of common council. If, in the case under discussion, the order and assessment had been made pursuant to law, in the event of the husband's death, the sum assessed on the person owning the fee, would have survived against the wife only. But, as the order and assessment

Hartford,
June,
1824.

Williams.
v.
Brace.

were made, if the husband should have died immediately afterwards, his assets would be obliged to make satisfaction, while Mrs. *Williams*, who, on this supposition, derives the whole benefit, would be entirely exonerated.

The proceeding of the court of common council, in the above particulars, was not erroneous merely, but without jurisdiction, and, of consequence, void. In the cases of *Dillingham* v. *Snow* & al. 5 *Mass. Rep.* 547. and *Henderson* & al. v. *Brown*, 1 *Caines* 92., in which it was adjudged, that trespass could not be sustained, the assessment was erroneous, but within the jurisdiction of the assessors. It was correctly decided, in *Stetson* v. *Kempton* & al. 13 *Mass. Rep.* 272., that trespass lies for the taking of property under an illegal assessment; and although a part of the assessment was lawful, that the proceeding to collect it was void, inasmuch as it is impossible to separate and distinguish, so that the act should in part be a trespass, and in part innocent.

The plea is undoubtedly insufficient. If a part of the sum assessed is lawful, the damages may be diminished, by a deduction of the sum, which was legally collected.

BRAINARD and BRISTOL, Js. were of the same opinion.

PETERS, J. being a citizen of the city of *Hartford*, declined giving any opinion.

> Judgment to be rendered for plaintiff,
> and damages assessed, accordingly.