## Chester Wall v. David D. Trumbull.

*Board of Supervisors: Judicial acts in allowance of claims: Bounties: Proof of claims: Liability of Supervisor: Clerk's Certificate.* At an annual township meeting it was voted that certain bounties previously paid by the citizens should be refunded.

At the meeting of the township board subsequently held, these claims were considered and allowed; the defendant being 'present and signing the record. He was ordered to levy upon the taxable property a sum sufficient to raise the amount. The township clerk delivered to the Supervisor the usual certificate, specifying the different amounts to be raised for different township purposes. *Held,*

1. That if the supervisor was in no way connected with the allowance of the claims, the certificate of the town clerk, specifying the amount to be raised, would be a complete protection, unless the certificate on its face apprised him that some of the moneys specified in it were illegal charges.

2. That the board, in auditing these claims, acted judicially, and they can not be held liable for any error in judgment, provided they had jurisdiction to act at all. That in this case a special statute — *Sess. L.* 1865 — together with the township vote, gave them full power to act upon the claims allowed by them.

*Held further,* That it was not necessary that claimants should appear in person, or that the proof of their claims were made under oath, provided that the facts respecting the claims were within the knowledge of the board.

*Date of Clerk's certificate: Effect on claims allowed.* It appeared that some of the claims were allowed subsequent to the *date* of the clerk's certificate. *Held,* That this fact did not affect the case, inasmuch as it did not appear that the certificate was actually *made out* and *delivered* before the allowance.

*Bounty tax: Tax Roll.* The bounty tax was placed in a separate column on the tax roll. *Held,* That this did not entitle any one to complain, inasmuch as no one's rights could possibly be prejudiced thereby.

*Heard October 8th, 9th and 10th. Decided November 2d.*

Error to Jackson Circuit.

This was an action of trespass brought by plaintiff in error against defendant in error, for issuing his warrant as supervisor to collect a certain alleged illegal tax, and by which the property of plaintiff in error was sold.

The defendant below pleaded the general issue, and gave notice that he did the act as supervisor. Judgment was rendered in his favor.

*Austin Blair,* and *Johnson & Higby,* for plaintiff in error.

1. The tax was illegal and void, because the case had never arisen in which the electors were entitled by law to

vote " to refund money to pay bounties," in pursuance of Act 217, Laws of 1865, p. 477.

The township of Sandstone. had never voted the money, or hired it, or issued bonds for it, or done any act indicating that this money should be loaned or advanced on the credit of the town.

On the contrary, every dollar of this money had been voluntarily subscribed, paid and expended by " individuals of the town acting on their own behalf, and for purposes determined upon by themselves entirely."

It is true they acted by and through war meetings, and some of the town officers were present; but they did not assume to act for the town, or to bind it either for the present or the future.    There was nothing for the act to legalize.

These meetings levied a tax upon those who were liable to draft, and determined that those who did not pay this should have no benefit of the moneys raised by the committees.    They expended the money in the purchase of . volunteers, in such a manner as they pleased.

If some were encouraged to subscribe upon the idea that a law might be passed by which the money could be refunded by a tax, then it is answered that no such law exists.

The special town meeting expressly refused to act.—13 Mich. 540.

2.    The allowance of the accounts by the township board was wholly without jurisdiction and void, and can form no justification for any act.—14 Mich. 336, and cases cited in brief for respondent.

3.    The certificate of the township clerk to the supervisor can not help this want of jurisdiction.    He had no right to make it.    He can only certify lawfully what the board can lawfully do.—1 Comp. L. 296; Laws of 1858, 181; Laws of 1865, 478.

The certificate shows on its face that the amount is to be raised for an illegal purpose. There was and could be lawfully no bounty fund or tax in Sandstone.

If the certificate would protect the defendant as supervisor, it could not protect him against the action for wrongfully allowing the accounts. — 4 *Cush.* 494.

4. The tax being illegal, and the plaintiff's property having been sold for it, the supervisor is liable in this action. — 13 *Mass.* 271; 4 *Pick.* 399; 5 *Mich.* 183; 1 *Kern.* 563; 3 *Seld.* 517.

The defendant in this case acted upon the town board in the unlawful allowance of the claims; and as supervisor in levying the tax.

He was not compellable to assess an illegal tax. — 13 *Mass.* 282; 4 *Cush.* 494; 4 *Gray*, 44.

That the defendant knew this tax to be illegal is proved by his putting it in a separate column, which is not authorized by law. It should have been put in the column of township expenses. — *Laws of* 1865, 477.

*Wm. K. Gibson* and *E. Pringle*, for defendant in error.

COOLEY J.

The defendant is sued in trespass for spreading upon the tax-roll of the township of Sandstone, of which he was the supervisor for 1865, the amount of certain allowances by the township board, for moneys advanced by individuals to pay war bounties, for the collection of the plaintiff's proportion of which, certain of his personal property was seized.

The following facts appear in the case: On February 4, 1865, an adjourned township meeting was held, at which a committee was appointed to act in filling the quota of the township under the then recent call of the President for 300,000 men. Immediately after the adjournment of that meeting, the persons present organized themselves into what was called a war meeting, which meeting was adjourned

from week to week for two or three months until the quota was filled. The main object of the meeting was to procure subscriptions in money, sufficient to hire volunteers to fill the quota of said township. Committees were appointed in each school district to procure subscriptions. An assessment was made upon each person liable to draft, and it was voted that any one who failed to pay the assessment should be excluded from the benefit of the common fund; but as it does not appear whether any one did fail to pay, and the quota was actually filled, so that all had the advantage of the subscription, I regard this fact as immaterial. The amount actually subscribed and paid was $4,518.23, and the number of the subscribers was 169.

The clerk of the township acted as clerk of the said township meeting, and he was requested by some members of the township board, and other electors present, to correspond with the member of the House of Representatives from that portion of Jackson county, to ask his assistance in procuring the passage of a law by which moneys paid for raising volunteers might be refunded by a tax; and the clerk did have such correspondence. Minutes of the proceedings of the war meetings were kept by the secretary thereof, for the purpose that, if such a law should be passed, the subscribers might have the benefit thereof. The subject of refunding the money raised by such subscriptions, by a tax upon the township, and of obtaining a law for that purpose, was frequently and openly mentioned in said war meetings, and the statement was also made, when the subject was mentioned, that said moneys would be refunded should authority be given for that purpose. And individuals composing the subscription committees frequently, in order to induce persons to subscribe, held out to them the inducement that there would probably be a law passed authorizing the refunding of the money by a tax, and in that case the subscribers would receive back their money. Nevertheless when the money was paid on these claims, many of them

— but what particular ones does not appear — were understood to be gifts.

On March 16, 1865, the Governor approved an act "to legalize the action of the several townships, city and wards in the county of Jackson, in paying bounties to volunteers, and to refund moneys to pay bounties." This court in *Miller v. Grandy*, 13 *Mich.* 540, held that this act did not authorize the refunding of moneys paid for the purpose, except where they had been advanced on the credit of the township in reliance upon some formal or informal action of the township or its authorities.

Assuming that these subscriptions came within the act, the question was submitted to the voters of the township, at the annual meeting for 1865, whether the bounty moneys thus subscribed and paid should be refunded, and the vote was in the affirmative. On October 2, 1865, a quorum of the township board met for the purpose of auditing and allowing, under this act and vote, the claims for moneys which had been thus subscribed and paid, and $4,228.14 were allowed on that day, and the balance being $290.09 were allowed on the seventh day of November following. The defendant was present at these meetings of the township board. At the first of them it was voted to raise the full sum of $4,518.23, to meet these claims, and the defendant, with the other members, signed a record of the proceedings containing this vote, and containing also an order to the supervisor to levy upon the taxable property of the township the sum of $4,918.83, to raise that amount and the sums to be raised for other township purposes. The township clerk made out and delivered to the supervisor the usual certificate of the sum to be raised for township purposes, specifying therein moneys to be raised as follows: For the bounty fund, $4,518.23; for general fund, $252; for highway expenses, $148.60. This certificate bears date Oct. 2, 1865, but it does not appear at what time it was actually made and delivered to the supervisor, except that the

Circuit Judge finds it was between the second day of October and the twenty-ninth day of November.

On the trial in the court below, the plaintiff proved that some of the persons who had claims allowed in their favor, did not appear before the Board, but the accounts of four of them were presented by the township clerk. Some of the claims were sworn to, and some were allowed from the subscription papers, which were before the board, but the genuineness of the signatures was not proven otherwise than by the subscriptions themselves. The township clerk, who was a member of the board, was one of the committee to obtain subscriptions, and showed to the board what subscriptions were paid to him, and which he knew to be correct. The subscription lists which were marked paid, were relied on by the board as evidence of the payment of the several sums subscribed. All this evidence of the action of the board on the allowance of the claims was afterwards struck out by the Circuit Judge as incompetent, and he rendered judgment for the defendant, on the ground that he was protected by the clerk's certificate in levying the amount of tax therein specified.

If the defendant were in no way connected with the allowance of the claims, I should agree with the Circuit Judge that the clerk's certificate would protect him, unless the certificate on its face apprised him that some of the moneys specified in it were illegal charges. The statute directs the supervisor to levy the amounts so certified to him, ( *Laws* 1863, *p.* 329; *Laws* 1865, *p.* 478 ), and if the certificate is in legal form, he performs only a ministerial duty in obeying the direction of the statute. A ministerial officer can not be held liable in such a case, where the precept or order under which he acts comes to him from the proper source, and is within the apparent authority of the body, or officer issuing or making it.— *Savacool v. Boughton*, 5 *Wend.* 170; *Bennett v. Burch*, 1 *Denio*, 141; *Abbott v Yost*,

16 MICH. — Q.

2 *Id.* 86; *Sheldon v. Van Buskirk*, 2 *N. Y.* 477; *Watson v. Watson*, 9 *Conn.* 140; *Prince v. Thomas*, 11 *Id.* 472; *Neth v. Crofut*, 30 *Id.* 580; *Fox v. Wood*, 1 *Rawle*, 143; *Waldron v. Lee*, 5 *Pick.* 323; *Donahoe v. Shed*, 8 *Met.* 326; *Slomer v. People*, 25 *Ill.* 70; *Hill v. Figley, Id.* 156; *Dwinnels v. Boynton*, 3 *Allen*, 310. And even if the officer had knowledge, outside of his certificate, of the facts constituting the alleged illegality, I do not think it would affect the rule of protection.— *Watson v. Watson*, 9 *Conn.* 140; *Wilmarth v. Burt*, 7 *Met.* 257; *Brainard v. Head*, 15 *La. An.* 489; *People v. Warren*, 5 *Hill*, 440.

The certificate in this case is claimed to be invalid, because on its face it apprises the supervisor that a portion of the moneys to be raised is for " bounty fund"; a fund, it is said, which is unknown to the law, or, at least, which could not lawfully have existed in this case. But even conceding all these claims to have been illegal, it was still legally possible that moneys were to be raised in the township for bounty purposes. If the township had assumed to borrow moneys or incur indebtedness for those purposes, authority was given by the act of 1865 referred to, to refund the same through the medium of taxation. The illegality, if any, must therefore depend upon facts not shown by the certificate, and into which it was not the duty of the supervisor, as a mere ministerial officer, to inquire.

It will now become necessary to consider whether the supervisor can be held liable as a member of the township board which allowed the claims. It is objected on his behalf that it does not appear that he voted in favor of their allowance, and it is urged that, for aught that appears, he may have opposed them. But I am of opinion that this objection is not well taken. The supervisor's presence was necessary to a quorum when they were allowed, and nothing appears from which his dissent can be inferred. He signed the record of the allowance, embodying therein an order to himself, as supervisor, to levy the amount by taxation — an

order without any purpose, so far as I can perceive, except to formally connect the persons signing it with the allowance of the claims, and the levy of taxes to meet them.

In determining whether the members of the township board voting for the allowance are liable, the first question which arises is, whether the nature of their duties is judicial, or ministerial only; for the rule of liability is altogether different in the two cases. A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. A judicial officer, on the other hand, has certain powers confided to him to be exercised according to his judgment or discretion; and the law would be oppressive which should compel him in every case to decide correctly at his peril. It is accordingly a rule of very great antiquity, that no action will lie against a judicial officer for any act done by him in the exercise of his judicial functions, provided the act, though done mistakenly, were within the scope of his jurisdiction. *Broom's Max.* 82; *Smith v. Boucher, Cas. Temp. Hardw.* 69; *Mostyn v. Fabrigas, Cowp.* 161; *Mills v. Collett,* 6 *Bing.* 85; *Garnett v. Ferrand,* 6 *B. & C.* 625; *Houlden v. Smith,* 14 *Q. B.* 841; *Yates v. Lansing,* 5 *Johns.* 291; 9 *Id.* 396; *Dicas v. Lord Brougham,* 6 *C. & P.* 249; *Holroyd v. Beare,* 2 *B. & Ald.* 473; *Pike v. Carter,* 3 *Bing.* 78; *Lowther v. Earl of Radnor,* 8 *East,* 113; *Basten v. Carew,* 3 *B. & C.* 652; *Stewart v. Hawley,* 21 *Wend.* 552; *Weaver v. Devendorf,* 3 *Denio,* 117; *Vail v. Owen,* 19 *Barb.* 22; *Hill v. Sellick,* 21 *Id.* 207; *Gordon v. Farrar,* 2 *Doug. Mich.* 411; *Wilkes v. Dinsman,* 7 *How.* 89. This principle of protection is not confined to courts of record, but it applies as well to inferior jurisdictions; the only difference being that authority in a court of general jurisdiction is to be presumed, while the jurisdiction of inferior tribunals must affirmatively appear on the face of their proceedings. — *Wight v. Warner,* 1 *Doug. Mich.* 384; *Clark v. Holmes, Ibid.* 390; *Chandler v.*

*Nash,* 5 *Mich.* 409.     Nor does the rule depend upon whether the tribunal is a court or not; it is the nature of the duties to be performed that determines its application.   Thus in *Harrington v. Commissioners, etc.,* 2 *McCord,* 400, a decision by road commissioners that one was not exempt from a road assessment was held a protection notwithstanding the party was exempt in fact.   In *Freeman v. Cornwall,* 10 *Johns.* 470, an overseer of highways who had adjudged one in default for not working, and obtained a warrant of distress from a magistrate, was held not liable, although in fact there was no default.   In *Easton v. Calendar,* 11 *Wend.* 90, the trustees of a school district included in their apportionment of taxes the collector's percentage, though otherwise directed by statute, but were held not liable.   In *Weaver v. Devendorf,* 3 *Denio,* 117, it was held that the duty of assessors in determining the value of taxable property was in its nature judicial, and that, however erroneous their decision, they were not liable to a suit on behalf of the party aggrieved.   The court say the act " is emphatically a judicial act," and " the principle of irresponsibility, so far as respects a civil remedy, is as old as the common law itself." The same rule was applied to assessors in *Dillingham v Snow,* 5 *Mass.* 547.   In *Brown v. Smith,* 24 *Barb.* 419, it was held that assessors acted judicially in determining upon the residence of a person owning real estate subject to taxation, and that they were not liable to an action for an erroneous decision.   And on the same ground they were held not liable, in *Vail v. Owen,* 19 *Barb.* 22, for assessing property which by law was exempt from taxation.   See the same principle applied in a tax case, in *Hill v. Sellick,* 21 *Barb.* 207.   The rule was applied in *Van Steenbergh v. Bigelow,* 3 *Wend.* 42, to appraisers appointed to assess damages under a turnpike act, and in *Gordon v. Farrar,* 2 *Doug. Mich.* 511, to inspectors of election in passing upon the qualification of voters.   See also *Stewart v. Hawley,* 21 *Wend.* 552; *Macon v. Cook,* 2 *Nott & McCord,* 379; *Moor*

*v. Ames,* 3 *Caines,* 170. There can be no question, I think, in the light of these decisions, that the duties performed by this board are within the principle of protection which they affirm.

None of these cases conflict with those where officers, judicial as well as ministerial, have been held liable when acting without jurisdiction. Assessors have frequently been held liable for levying a personal tax upon a person not resident within their township, because their jurisdiction over personal assessments was confined to residents — *Freeman v. Kenney,* 15 *Pick.* 44; *Gage v. Currier,* 4 *Id.* 399; *Suydam v. Keys,* 13 *Johns.* 444; *Mygatt v. Washburn,* 15 *N. Y.* 316; and all classes of officers have been subjected to similar responsibility. The rule of official exemption depends in these cases upon jurisdiction; but wherever that appears and is not exceeded, the protection is complete.

Did, then, the township board of Sandstone have jurisdiction to pass upon the claims for bounty moneys, which were presented to and allowed by them? I think they did. The township board is vested with full power by law (*Comp. L.* § 564) to audit and allow the claims against the township. In regard to claims generally, nothing more is necessary to confer jurisdiction than that a claim should be presented purporting to be a claim against the township. Pleadings, or formal papers of any kind are not required, but the presentation of the claim to the board confers upon it authority to decide whether it is a valid township charge or not. The nature of the claims in the present case, however, was different. Without the special statute they would not have been charges against the township; but when the statute authorized the township to vote to refund the moneys advanced for bounties, and the township had voted to do so, nothing more was necessary to call into action the judicial functions of the board, but that claims should be presented under the act and vote. The board then had jurisdiction to determine whether the claim was within the

law or not, and their record, showing the presentation of the claim would affirmatively show jurisdiction.

If we were at liberty to pass upon these claims ourselves, upon the evidence appearing in this record, I should be inclined to think the board decided correctly as to some of the claims, and erred as to others. But nothing could be more apparent than the injustice of reviewing their decision in a suit against them in trespass. For whether each particular claim was within the law or not, would depend upon the proof as to whether the money was advanced upon the credit of the township; and the showing on this point might be very different before the board, and in the circuit court. To hold the members of the board responsible in such a case, we must not only hold them bound to decide correctly at their peril, upon the evidence presented to them, but we must also hold that at their peril they must come to the same conclusion as to the legality of the claim which the circuit judge will afterwards arrive at on another hearing, when the testimony may be either more or less than they acted upon, and when even the same witnesses may have told a different story. The mere statement of such a proposition seems to me sufficient to refute it.

I am aware of no case which conflicts with these views. In *Williams v. Brace*, 5 *Conn.* 190, the mayor of the city of Hartford was held liable in trespass, for signing, by direction of the common council, a warrant for the collection of an illegal assessment upon the plaintiff, for a railing erected in front of his and his wife's land, where a sidewalk was being constructed, and for improvements the cost of which was chargeable upon his wife's property. The common council had not ordered the railing erected, and had no power under the statute to do so; and the assessment against the husband for the improvements in front of his wife's land was found to be "an assumption of right without any color of authority." There was, therefore, a clear excess of jurisdiction in directing the warrant to issue. I

do not doubt the correctness of this decision : the want of power appeared on the face of the action by the council, and the mayor was bound to take notice of it at his peril. Judicial functions were not being exercised, and the case falls within a general class the governing principle of which is clear. The court carefully distinguish the case from *Dillingham v. Snow*, 5 *Mass.* 547, and *Henderson v. Brown*, 1 *Caines*, 92, where assessors were held protected when acting within their jurisdiction, notwithstanding their assessment was erroneous.

It was suggested on the argument that the board exceeded their power in allowing claims not presented and without proof. I think they did neither. A few of the claims were brought before the board by the clerk without the personal appearance of the claimants, but this is no more than frequently happens at the meetings of such bodies. The personal presence of claimants is unimportant if their claims are not disputed. Nothing is more common than the delivery of demands to some member of the board, with the understanding that he shall place them before that body when they meet. There are no adversary parties ; the board is bound to protect the public interest, and if the claimant does not regard it important to his interest to be present, it is not perceived that any other person is entitled to complain, when it is immaterial to the public whether he is present or not. And there is no rule of law making it requisite that the evidence in support of the claims should be under oath. Doubtless such a course is desirable in most cases, but where the circumstances giving rise to the claim are within the personal knowledge of the members of the board, and they alone are to be satisfied of its correctness, the production of other evidence seems an act of mere supererogation. And if they may act upon the personal knowledge of all of the members, so they may also act upon the knowledge of one only, communicated to the board at its meeting. Such was the case here. The clerk who had acted in

obtaining subscriptions and collecting the moneys, gave such
evidence — though without oath — as satisfied the other
members. It is not suggested that his evidence was in any
particular untrue. I should be unwilling to lay down any
rule which should render void the action of such bodies be-
cause they had acted upon the statement of one of their
members without requiring him to be sworn. Even the
courts may act upon unsworn evidence where the parties
consent; and as the township board represents the citizens
who are to be affected by the allowance of the claim, their
consent to receive unsworn statements should be equally ef-
fectual.

It was also suggested that the defendant should be held
liable because a portion of the claims were not allowed un-
til after the clerk's certificate was made out and delivered
to him. It does not affirmatively appear that such was the
fact, and I need not therefore consider what would have
been the effect if it had.

The question which this case presents is a very different
one from that in *People v. Supervisor and Town Clerk of
Blackman,* 14 *Mich.* 336. There the Township board had
assumed to pass upon and allow claims which did not even
purport to be within the statute. The supervisor and town-
ship clerk refused to issue orders on these allowances, and
we held them justified in their refusal. While jurisdiction
affirmatively appears in this case, the want of it was shown
there. But had it been otherwise, and the board had erro-
neously allowed a demand not within the statute in fact, I
do not desire to be understood as intimating that their de-
cision would be so conclusive upon them that they would
be compellable to issue an order for its payment after dis-
covering their error. The only question now before us is,
whether they can be made liable in trespass for their de-
cision.

This view of the case disposes of it. We are all agreed
that the bounty tax was not made void by being placed in

WALL v. TRUMBULL.

a separate column by itself under the head of township taxes, instead of being mingled with the other township taxes, as directed by the statute. No one was injured by this course, and no one can complain.

The judgment of the court below, I think, was correct, and must be affirmed with costs.

MARTIN CH. J. and CHRISTIANCY J. concurred.

CAMPBELL J.

Plaintiff, whose goods were seized and sold to pay a bounty tax levied in the town of Sandstone in Jackson county, in 1865, sued defendant in trespass, he being the supervisor who issued the warrant, under which he sought to justify, as authorized by previous proceedings. The Circuit Court held that if the supervisor followed the clerk's certificate, showing what taxes should be raised, he was not to be held liable for any illegalities in the previous action of the town board; and excluded all evidence of such illegalities from consideration, deciding that the "Township board *had, or might have had, jurisdiction of the subject matter, and the supervisor had no authority to review or reverse its allowance of accounts.*" It was therefore decided that "*the defendant having done only what the law compelled him to do, is not guilty.*"

No proofs were introduced, and no finding is made, showing the action before the town board to bring any of the claims which they allowed to their attention, in any written form; and the action had at town meeting in voting to "refund the bounty," is the only preliminary step distinctly shown. Some testimony introduced by the plaintiff, to show how the town board proceeded in the matter, was ruled out as incompetent, on the grounds already mentioned.

The moneys included in the allowances were advanced by individuals to aid in clearing the town from an impending draft. The law of 1865 ( *p.* 477 ), under which the claims

were allowed, authorized only such advances to be refunded as were made on the faith of town action.—*Miller v. Grandy*, 13 *Mich.* 540. All such claims were to be audited and allowed by the town board "*in the same manner as other ordinary claims are audited and allowed.*" It was made the duty of the town clerk "*on or before the first Monday in October*" to certify the amount of indebtedness on this account to the supervisor, whose duty it was made to insert it in the tax roll as part of the incidental expenses of the township.

It is found by the court, that on the first Monday of October, 1865, the claims allowed amounted to $4,228.14, and that on the 8th day of November—a little more than five weeks thereafter—further allowances were made, amounting to $290.09. On the first Monday of October the board passed a resolution directing the amount of $4,918.83 to be raised for town purposes, of which $4,518.23 was declared to be for refunding bounties, and the rest for other specified objects. On the same day, as shown by its date (but when actually delivered to the supervisor does not appear), the clerk made a certificate to the supervisor in all respects conforming to the resolution of the board. The court finds this to have been delivered before the 29th of November, but how long before is not determined. The supervisor inserted in the roll the full amount certified, making no deduction for claims not allowed at the date of the certificate.

The court also finds that several sums allowed as claims were understood to be gifts. It also appears that claims were allowed by the board, who had a bare quorum, in names identical with their own; a matter, which, if their action is to be regarded as judicial, may bear upon its validity.

The plaintiff offered to show, and did show (but the proofs were afterwards ruled out as immaterial) that claims were not presented by some persons in whose favor allowances were made, but that some of them were presented by

Joseph Van Valin, the clerk, who was a member of the board; that some accounts were sworn to, and some were allowed from subscription papers, and that the board had no proof that the signatures were genuine. That Van Valin stated to the board the payments which had been made to himself, and which he knew to be correct, and that the subscription lists before mentioned, which were marked paid, were relied on by the board as proof of payment of the several amounts. Among the allowances set forth in the town record is one for sixty dollars, to which is prefixed in brackets " [ $41.00 paid ]," of which no explanation is given. .

Without adverting to the other peculiarities mentioned, there can be no doubt that some claims were allowed for moneys not advanced on the faith of the town, but designed as voluntary contributions, and these could not lawfully be allowed. As the court has found this fact, and has decided the case upon a ruling which is entirely consistent with its having been stated to the board before they made the allowance, and which declares any actual want of jurisdiction over the claims to be no ground of action in this case, I think the judgment should be reversed on this ground. But as there is another error which entitles the plaintiff to judgment without a further trial, this is more important, as properly, in my judgment, putting an end to the case.

The tax, even if otherwise valid, is excessive, in the amount it includes not allowed in October. While it may be admitted that, if the clerk had failed to certify on that day, he might have been compelled to do so thereafter by mandamus, yet such delay, although not vitiating his certificate, would have been nevertheless a violation of duty. At whatever time his certificate should be actually made, it could not lawfully embrace claims which did not exist as town debts when he should have acted. He could not by his delay add to the amount of lawful taxes, nor could he by such delay give authority to the town board to execute

powers which had expired by lapse of time. When the law positively required these accounts to be certified "*on or before the first Monday of October*" 1865, all claims not then allowed must have been shut out from that year's taxes whether further barred from future allowance or not. We can not disregard such a clear condition appended to these claims by the only statute under which they could be allowed at all.

The board had no power to raise any money for bounty purposes, beyond what was actually allowed in the shape of claims. The only power to vote money is where the town meeting has failed to vote for "*the ordinary township expenses.*"— *Comp. L.* § 597. The law of 1865 required the clerk to certify the indebtedness, and the resolution of the board was entirely nugatory to furnish any authority.

This excess, being unwarranted by law, rendered the roll invalid to that extent; and the sale of plaintiff's goods was therefore illegal, and he should have judgment for their value — found by the court to be $58.50, with interest from February 24, 1866.

Whether any of the claims allowed were within the statute has not been found as a conclusion of fact or law by the Circuit Court, and I express no opinion on the subject. The facts are not very clear.

As the case stands, it is apparent that unless the judge was correct in his broad ruling, that the clerk's certificate was conclusive, the judgment can not be maintained. · It is sought to support this doctrine by likening the supervisor's case to that of the collector. How far this analogy exists, and how far it can protect him, is the next question to be examined.

Although some cases hold to the contrary, there is not much reason to doubt that an officer merely ministerial may rely on a regular warrant, having nothing on its face from which he could reasonably be expected to look further. If the roll or warrant should contain anything not authorized by

some law to be found there, he would, of course, be bound to know its illegality.    If it should omit to show anything legally required to appear in it, the same result would follow.    In the present case, the bounty tax being only authorized upon special conditions, the question arises how far he is bound to inquire into their performance.    It has been held, and it seems to me correctly, that any action required to be had by any body of which he is a constituent part, must be presumed to be within his knowledge, and he is therefore bound to inform himself of it.    He is bound to know whether the proceedings had at the township meeting were such as to give jurisdiction to the town board to act upon claims at all;    that is, whether there was a legal vote properly had at the meeting.    Where township or district meetings have voted illegal expenditures, the collector, as well as the other town officers, has been held a trespasser for enforcing a tax to pay them.—*Henry v. Sargeant,* 13 *N. H.* 321;    *Drew v. Davis,* 10 *Vt.* 506;    *Waters v. Daines,* 4 *Id.* 601;    *Bates v. Hazeltine,* 1 *Id.* 81;    *Bangs v. Snow,* 1 *Mass.* 181.    But if his only knowledge is derived from parol evidence, or if his knowledge can only be proved by such evidence, he need not act upon it.— *Wilmarth v. Burt,* 7 *Met.* 257;    *People v. Warren,* 5 *Hill,* 440;    *Watson v. Watson,* 9 *Conn.* 140;    *Abbott v. Yost,* 2 *Denio,* 86.    This roll only varies from the statute by having the bounty tax in a separate column.    Had it been combined with another which the law required to be kept separate, there would be room for serious deliberation upon its validity;    but by separating it, the tax payer is enabled to single out all of his other taxes, and must be benefitted instead of injured by the separation.

But if the accounts were illegally audited, the supervisor's knowledge of that fact stands on a different footing from the collector's.    Both he and the clerk were members of the board, and in the present case were a majority of it. They of necessity knew, and were legally bound to know,

just what the action was. It would be absurd to allow one of these two members, by a certificate concerning what both of them knew, to relieve either from responsibility for the illegal action on which the certificate is based. The law in these cases imposes the responsibility for mischief on its originators, rather than on their subordinates.— *Loomis v. Spencer*, 1 *Ohio St.* 153. And the defendant is liable for imposing a tax for any sum not legally determined to be a town charge, by proceedings which in law protect him from inquiry.

It is not pretended that the sum of $290.09 was allowed prior to November 8, 1865. And I think there is no ground upon which he can escape this liability.

The plaintiff, however, was debarred from entering upon a consideration of the authority on which the remaining claims were allowed against the town, and from showing or insisting that no compliance with the law was to be found. And the defendant relies solely upon the ground that the town board having jurisdiction to allow some bounty claims, and having actually allowed these, it must be conclusively presumed that these came within the jurisdiction, and were properly allowed. I think this is claiming for a special auditing board more respect than is allowed by law to a court of record of general jurisdiction. For even in such a court, unless there appears to be jurisdiction to proceed with the particular suit, upon some plaint and process, its general jurisdiction over such subject matters will not prevent its action from being an absolute nullity. A judgment alone can not stand for an entire record.

But I do not conceive that these special boards, created to transact the general business of towns, are in any proper sense judicial bodies, or free from responsibility for illegal conduct, on the ground that some discretionary duties are imposed upon them. The law has seen fit to exempt the judges of regular courts in most cases, but by no means in every case, from responsibility for honest mistakes of

jurisdiction. But this is because they neither originate nor execute any of their legal business. They are passive until others require their arbitration, and they leave their decrees to be enforced by ministerial officers on the motion of those who are interested. But when a judge is his own minister, or interferes beyond his judicial duty, his judicial immunity does not cover his ministerial faults. And in tribunals of inferior and special jurisdiction, the general rule is that the officer must, at his peril, keep within his jurisdiction, and can not shield himself from responsibility for any mistake on that point.

Thus, in *Percival v. Jones*, 2 *Johns. Cas.* 49, a justice who had rendered a valid judgment, issued a *capias* upon it against the defendant, who was personally exempt from such process, and so informed him. It was held that, because he had issued the writ on his own motion, without the request of the plaintiff, he was liable in trespass, when if he had done it on request he would have been protected.

The cases are numerous where magistrates and inferior tribunals, and even judges of important courts, not exercising common law jurisdiction, have been held liable to action, not only for proceeding in matters not within the general scope of their jurisdiction, but for irregular and unauthorized action in excess of their powers, as applied to particular cases within that general jurisdiction, although they have acted with honest intentions. And where such action is legally unauthorized, its affirmance on appeal makes no difference. In *Beaurain v. Scott*, 3 *Campb.* 388, Sir William Scott—afterwards Lord *Stowell* — was held liable in trespass for illegally excommunicating a party who refused to comply with one of his orders, although the proceeding to punish had been affirmed on appeal by Sir John Nicholl, in the higher court. The common law court recognized the hardship of the case, but had no hesitation in applying the rule. In *Welch v. Nash*, 8 *East*, 394, an order of justices closing an old highway and setting out a new one in its

place, had been confirmed upon appeal, and yet was held not to protect them from trespass. It was there held that their finding concerning the new road could not make it different from what it was in fact, and that it was not such a new road as the law contemplated. There was no question but that they acted fairly. But the court held, as has been held in this state, as well as elsewhere, that such courts or bodies can not manufacture facts by reciting them, or preclude inquiry into the jurisdiction by asserting what is not true. In *Bigelow v. Stearns*, 19 *Johns.* 39, a justice having jurisdiction, issued regular process, which was served on the defendant, who made default. The magistrate, thereupon, without issuing further process to secure his presence, gave judgment in his absence. It was held, as the law contemplated the personal presence of the defendant on his conviction, that the justice was liable in trespass for giving judgment, under which he was arrested. So in *Vosburgh v. Welch*, 11 *Johns.* 175, where a justice was empowered to issue writs of attachment on "*satisfactory proof*," it was held he was a trespasser if he acted upon his own knowledge or belief, or upon an officer's return, or upon anything not answering to the description of legal evidence, as used in courts of justice. In *Crepps v. Durden*, 2 *Cowp.* 640, a magistrate who convicted a person, on regular complaint and proofs, of four several offenses of a similar character, committed on the same day, was held a trespasser as to the last three convictions, because only one offense could be legally committed in a day. In this case each of the complaints was lawful in its origin, and might have sustained a conviction alone. In *Branwell v. Penneck*, 7 *B. and C.* 536, a magistrate who construed a blind statute as reaching a class of laborers who were held not properly falling within it, was made liable in trespass. In *Groome v. Forrester*, 5 *M. and S.* 314, where complaint was made that one official book was wrongly withheld, and in his judgment the magistrate required defendant to be committed until he restored all

such books wrongfully detained, a similar liability was enforced. The following cases are also in point to show that general jurisdiction will not relieve against the consequences of usurpation or mistake in a particular case, and that power to act does not depend on a magistrate's opinion of his correctness, however sincerely entertained. — *Morgan v. Hughes*, 2 *T. R.* 225; *Jones v. Gurdon*, 2 *Q. B.* 600; *Leary v. Patrick*, 15 *Id.* 266; *Grumon v. Raymond*, 1 *Conn.* 40; *Newbould v. Coltman*, 3 *L. and Eq.* 455; *Briggs v. Wardwell*, 10 *Mass.* 356; *La Roe v. Roeser*, 8 *Mich.* 537; *Stevens v. Clark*, 1 *C. and M.* 509; *Caudle v. Seymour*, 1 *Q. B.* 889; *Mason v. Barker*, 1 *C. and K.* 100; *Stanley v. Fielden*, 5 *B. and Ald.* 425; *Marshalsea Case,* 10 *Co.* 76; *Tracy v. Williams*, 4 *Conn.* 107; *Hill v. Bateman*, 2 *Str.* 711; *West v. Smallwood*, 3 *M. and W.* 418; *Watson v. Bodell*, 14 *M. and W.* 57.

The case of *Carratt v. Morley*, 1 *Q. B.* 18, is instructive upon several points involved in the present issue. There a party brought suit in a local court, from whose jurisdiction there were some excepted parishes, in one of which the defendant resided, showing a cause of action within the jurisdiction. The defendant, being summoned, failed to appear, and they gave judgment. The proceedings of the court were regular in form, and the plaintiff was held to be protected, and it was said that if any evidence had been given before the court to show defendant within the jurisdiction, they would have been justified. But no such evidence appeared, and it was decided that it was not permissible to assume it had been given, from the mere fact that the court acted in a manner requiring it to warrant their proceeding.

In *Wight v. Warner*, 1 *Doug.* 384, and *Clark v. Holmes*, 1 *Id.* 390, the law was laid down in this court with great clearness, requiring all facts necessary to make valid the acts of inferior tribunals to appear affirmatively, or to be made out by proof, and not only denying all presumptions

of authority where it does not appear, but also allowing all presumptions from the record to be repelled by evidence. The necessity of a particular jurisdiction over each case, instead of a general jurisdiction over subject matters, is shown by these and by most of the cases cited; and in several of them jurisdiction over the case itself was not allowed to remedy irregular and unauthorized steps in it. The range of discretion allowed in these tribunals is very limited, and outside of it they act at their own risk. A partial excess of power is as fatal as a complete usurpation. It is considered that when private rights are unlawfully invaded, under color of law, there can be no safety unless in enforcing the maxim that all men are bound to know the law; and those who assume to take active measures must be able to show their legality. In such cases they cannot make presumptions to cover their own assumptions.

In *Henry v. Sargeant*, 13 *N. H.* 321, and *Guptail v. Teft*, 16 *Ill.* 365, the inapplicability of the term "courts" to such bodies is very plainly expressed, as it is implied from the other authorities. The cases of *Stanley v. Fielden*, 5 *B. & Ald.* 425; *Fernley v. Worthington*, 1 *M. & G.* 491; *Newbould v. Coltman*, 3 *L. & Eq.* 455, and *Williams v. Brace*, 5 *Conn.* 190, are all in point to show that even regular warrants, from bodies having general jurisdiction, will protect no one who is bound to know the true state of affairs; and in some respects they resemble this case very closely. In *Williams v. Brace* a common council had, as the town board here had, power to audit accounts and direct the levy of money to pay them. A single item of one account was for an expenditure they had not authorized and were not bound to pay. They ordered the mayor to issue his warrant, and for doing so he was held liable in trespass. In that case there was not only a general jurisdiction over accounts, but a particular jurisdiction over the account audited; and, had the one offending item been thrown out, the rest would have been valid. They exercised their judgment in allowing

the whole, but it did not prevail to protect them or their officer who followed their directions. And if a partially wrong account cannot be lawfully made a charge, it must certainly be open to parties to show an entire want of jurisdiction by inquiring into the validity of the whole.

The decisions which deny the right of such bodies to make jurisdiction for themselves, out of the necessity laid upon them of inquiring concerning the persons or interests to be affected by their action, present the subject in many different phases. Wherever a question is one of opinion merely, whether it be of value, or of the weight to be given to evidence legally admitted, there is no doubt discretion is subject to no dispute. But where the right to act depends on the actual existence of facts, nothing short of such actual existence will suffice, and opinion is of no account. Thus the duty laid upon assessors and similar officers, of making assessments on persons and property within their districts, will neither render an assessment valid against an absolute exemption, nor even save them from being trespassers. In *Freeman v. Kenney*, 15 *Pick.* 44, the officers relied upon an official perambulation of a town for its true boundaries, yet they were not excused for their mistake. In *Hays v. Pacific S. B. Co.* 17 *How.* 596, even a collector was held a trespasser for collecting taxes assessed upon ships which were exempt because belonging abroad. And in all of the following cases, the circumstances showed the officers to have acted according to their best judgment and information, and yet to have been trespassers — *Weaver v. Price*, 3 *B. & Ad.* 409; *Suydam v. Keys*, 13 *Johns.* 444; *Mygatt v. Washburn*, 15 *N. Y.* 316; *Lord Amherst v. Lord Somers*, 2 *T. R.* 372; *Thurston v. Martin*, 5 *Mason*, 497.

In *Perkin v. Proctor*, 2 *Wils.* 382, a person against whom bankruptcy proceedings were had in good faith, belonged to a class which was afterwards, in another case, held by the courts to be exempt. No such point was raised or decided in his own case, yet the proceedings were held actionable.

And in *Bowman v. Russ*, 6 *Cow.* 234; *Smith v. Shaw*, 12 *Johns.* 257; *Wise v. Withers*, 3 *Cranch*, 331, and *Harrison v. Bulcock*, 1 *H. Bl.* 68, the rulings were equally severe. The cases of *Deyo v. Jennison*, 10 *Allen*, 410, and *Gage v. Currier*, 4 *Pick.* 399, rest on similar grounds. So in *Warne v. Varley*, 6 *T. R.* 443, where leather searchers seized leather as imperfectly dried, and it turned out by the report of the official viewers to be sufficient, the searchers were made responsible, although liable to penalties for not seizing bad leather.

If every claim which town boards see fit to allow is to be held valid, then there was no need of the bounty law, as every burden they see fit to impose on the community is binding. But it is not disputed that they are confined to claims coming within this statute. They cannot even consider bounty claims in general. They can only audit such as were created on public faith, and can only allow so much of these as will keep within the sum permitted to be raised for each man. Whenever any claim should appear to be outside of this limit, it would be a violation of duty to audit it, as it would at once pass from the jurisdiction. And no claim not distinctly purporting to come within the law, could be considered at all without an excess of jurisdiction. Nor can claims be thrown in upon them in a mass, and bolster up one another. The auditing of every individual claim, like the trial of every suit, is a separate and independent proceeding, and must stand upon its own merits. Including a single invalid allowance in the roll is as fatal in such an action as this as if all were bad.

Nor is it competent for such bodies to act on claims which are to be the basis of taxation without some regard to proofs. If they receive legal evidence, they are to judge of its value; but where no such proof is shown to have been given—if this is not presumptive evidence against them, it certainly is open to be inquired into. Officers cannot make absolute presumptions in their own favor to screen them

from responsibility to those whom their misconduct has injured. See *Carratt v. Morley*, 1 *Q. B.* 18; *Caudle v. Seymour*, 1 *Id.* 889; *Stanley v. Fielden*, 5 *B. & Ald.* 425; *Leary v. Patrick*, 15 *Q. B.* 266; *Adkins v. Brewer*, 6 *Cow.* 206; *Morgan v. Hughes*, 2 *T. R.* 225; *Tracy v. Williams*, 4 *Conn.* 107; *Bostock v. Saunders*, 2 *W. Bl.* 912; *Drew v. Davis*, 10 *Vt.* 506; *Platt v. Stewart*, 10 *Mich.* 260.

The proofs excluded by the circuit court, showed that the board acted partly on the unsworn statement of one of their own members, and partly upon papers not even proved to be genuine — which is equivalent to acting without any proof whatever. But the ruling of the court was further, not only that no jurisdiction need appear over any specific claims, but that its absence could not be shown; and that even an entire and apparent want of jurisdiction to examine them would not avail to defeat the conclusive protection given by the clerk's certificate. Accordingly there is no finding of such facts as would give jurisdiction in any of these cases. It is found that moneys were advanced and authorized to be refunded, but it is not shown that any claims were presented in the manner required by law; and had this appeared, it would still, under the authorities, have been open to contradiction.

The statute does not permit claims to be presented by parol, nor does it make the town record book the primary evidence of their allowance. Every claim is required to be in writing, and the allowance is required to be endorsed upon the claim itself; and the claims so endorsed are to be kept on file, and produced for inspection at the town meeting. — *Comp. L.* § § 564, 567. Until a claim is presented showing such facts upon its face as bring it within some class authorized to be audited, there is nothing for the board to act upon. A mere general charge of so much money, without specifying for what the charge is made, would show nothing; and it would be ridiculous to expect that the electors could be made any wiser by inspecting it. And no

presumption would be permissible in favor of a document which would be as applicable to illegal as to legal demands. When the statute is complied with, each account, when filed, shows the ground of jurisdiction and its exercise, without resort to anything extrinsic; and such presumptions as are thus raised may be safely allowed to stand until overcome. But where nothing appears nothing can be presumed.

For these reasons I think the judgment should be reversed, and judgment should be rendered on the finding for the plaintiff.